[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13381
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cr-00281-RBD-JBT-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRYAN ADRAIN COPELAND,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 29, 2013)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

After a guilty plea, Bryan Copeland appeals his total 264-month sentence for wire fraud, aggravated identity theft, and making false claims against the United States. Copeland argues, inter alia, that the government breached the plea agreement by failing to recommend a three-level guideline reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. After review, we vacate the district court's judgment and remand for resentencing.

## I.  BACKGROUND

### A.    The Indictment

In 2011, a federal grand jury issued a 38-count indictment against Copeland, charging him with 11 counts of mail fraud, in violation of 18 U.S.C. § 1341; 16 counts of wire fraud, in violation of 18 U.S.C. § 1343; 9 counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A; and 2 counts of making false claims against the United States, in violation of 18 U.S.C. § 287. The indictment alleged that Copeland, with the help of other co-conspirators, engaged in a prolonged tax fraud scheme by using stolen identities to file fraudulent tax returns and obtain refunds.

### B.    The Plea Agreement

In 2012, Copeland entered into a written plea agreement with the government, in which he agreed to plead guilty to one count of wire fraud (Count 27), one count of aggravated identity theft (Count 36), and one count of making a

2

false claim against the United States (Count 37).  In exchange, the government agreed to dismiss the remaining counts of the indictment.

It is undisputed that, before entering the plea agreement, the government was aware of two pre-indictment incidents that were later used to enhance Copeland's sentence for obstruction of justice.  Specifically, (1) in February 2010, after the investigation into Copeland's criminal activities commenced, Copeland attempted to destroy evidence while fleeing from law enforcement officers, and, (2) in September 2011, Copeland intimidated a potential witness by striking the witness with his car.

Despite knowing of these incidents, the government agreed to recommend a two- or three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.  Specifically, the plea agreement provided:

Acceptance of Responsibility – Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing . . . the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility

3

rests solely with the [government], and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

(Emphasis added).

The plea agreement also contained a separate "Substantial Assistance" provision, pursuant to which Copeland agreed to "cooperate fully" with the government's investigation, and, in return, the government would "consider" filing a motion for, inter alia, a downward departure under U.S.S.G. § 5K1.1.

In a paragraph entitled "Sentencing Information," the government reserved its right (1) to provide all relevant sentencing information to the district court and the U.S. Probation Office, and (2) "to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein."

## C.    Presentence Investigation Report

After the district court accepted Copeland's guilty plea, a probation officer compiled the Presentence Investigation Report ("PSI"), calculating Copeland's guideline range.  The PSI calculated a total offense level of 42, which included, inter alia, a 2-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. The PSI applied this enhancement because of the two above incidents that occurred before Copeland was indicted.

4

The PSI did not apply a § 3E1.1 reduction for acceptance of responsibility, given the above two incidents and because Copeland "did not truthfully admit all of his conduct and relevant conduct" and did not "voluntarily assist authorities with the recovery of the fruits of the offense."

Copeland's total offense level of 42 and his criminal history category of I yielded an initial guideline range of 360 months to life imprisonment. Because the combined statutory maximum sentences for wire fraud (Count 27) and making false claims (Count 37) totaled 25 years (300 months), the guideline range for those offenses became 300 months, pursuant to U.S.S.G. § 5G1.2(b). See 18 U.S.C. §§ 287, 1343.[1]

## D.    Objections to the PSI

Copeland objected to the PSI's failure to recommend a reduction for acceptance of responsibility under § 3E1.1, noting that the government had agreed to recommend a two-level reduction in the plea agreement. Copeland also objected, among other things, to the two-level enhancement for obstruction of justice.

---

[1]In calculating Copeland's guideline range, the PSI grouped together Count 27 (wire-fraud) and Count 37 (making false claims), pursuant to U.S.S.G. § 3D1.2(d). Copeland's conviction on Count 36 (aggravated identity theft) mandated a consecutive minimum sentence of two years, or 24 months. See 18 U.S.C. § 1028A(a)(1). The guideline sentence for that offense was 24 months, pursuant to U.S.S.G. § 2B1.6, and was calculated separately.

The government did not object to the PSI or its failure to include the acceptance-of-responsibility reduction.  On the contrary, the government filed a sentencing memorandum affirmatively arguing that (1) the obstruction-of-justice enhancement should apply, given Copeland's two pre-indictment incidents mentioned in the PSI, and (2) the acceptance-of-responsibility reduction should not apply.

The government acknowledged that, in the plea agreement, it had agreed to recommend a § 3E1.1 reduction for acceptance of responsibility.  It argued, however, that this "recommendation was included in light of the fact that the plea agreement also contain[ed] provisions which would provide for a downward departure motion pursuant to Section 5K1.1 of the Sentencing Guidelines, should the defendant provide substantial assistance."  In other words, the government appeared to argue that its agreement to recommend an acceptance-of-responsibility reduction was tied to whether it also filed a § 5K1.1 substantial-assistance motion.

The government further explained that, although an obstruction-of-justice enhancement usually precludes an acceptance-of-responsibility reduction, both the enhancement and the reduction may apply in "extraordinary cases."  Thus, Copeland could have qualified for the § 3E1.1 reduction if he "provided full, complete, and total cooperation which supported a Section 5K1.1 motion." According to the government, because no § 5K1.1 motion was forthcoming in this

6

case, there were no extraordinary circumstances justifying a reduction for acceptance of responsibility.

### E.    Sentencing Hearing

At the sentencing hearing, the government essentially reiterated the above argument from its sentencing memorandum, stating that Copeland could have qualified for an acceptance-of-responsibility reduction under § 3E1.1, even with the enhancement for obstruction of justice, but, given Copeland's lack of cooperation with the government, the reduction was not warranted.

The district court overruled Copeland's objection to the obstruction-of-justice enhancement, finding that the government established obstruction by a preponderance of the evidence.  The district court then upheld the PSI's denial of the reduction for acceptance of responsibility.  While noting that Copeland expressed remorse for his crimes, the district court stated:

> I don't find a lot of acknowledgment of the scope of the fraud, the complications of the fraud to the extent that other people were involved in the criminal enterprise.
>
> I don't find any discussion about the disposition of the proceeds of the fraud, which is particularly troublesome to the Court, and is oftentimes I think a very good barometer of the acceptance of responsibility; and I find all those things to be absent here.

The district court then adopted the PSI's guideline calculations.

In sentencing Copeland, the district court varied downward from the applicable guideline range of 300 months and imposed a total sentence of 240

months' imprisonment on Counts 27 and 37 (wire fraud and making false claims). The district court explained that the downward variance was justified in light of the potential sentencing disparities between Copeland and other defendants involved in Copeland's tax fraud scheme. The district court also imposed a statutorily mandated 24-month consecutive sentence as to Count 36, for a total sentence of 264 months in prison and 3 years of supervised release.

## II.  DISCUSSION

### A.    Plea Agreements

"The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." United States v. Horsfall, 552 F.3d 1275, 1281 (11th Cir. 2008) (internal quotation marks omitted).[2] We analyze the plea agreement according to the defendant's reasonable understanding on entering the plea. United States v. Rewis, 969 F.2d 985, 988 (11th Cir. 1992). If the government disputes the defendant's understanding, we use "objective standards" to determine the terms of the plea agreement. Id. An ambiguous agreement "must be read against the government." United States v. Copeland, 381 F.3d 1101, 1105-06 (11th Cir. 2004) (internal quotation marks omitted).

### B.    Copeland's Plea Agreement about Acceptance of Responsibility

[2]We review de novo whether the government has breached a plea agreement. United States v. Copeland, 381 F.3d 1101, 1104 (11th Cir. 2004).

8

In this case, the plea agreement stated that the government would recommend a two-level reduction for acceptance of responsibility under § 3E1.1(a) unless "adverse information is received suggesting such a recommendation to be unwarranted." At sentencing, the government presented no evidence of "adverse information" received after the plea agreement was entered.

Rather, the government argued, essentially, that Copeland was not eligible for a § 3E1.1 reduction because he failed to provide substantial assistance to the government such as to qualify for a downward departure motion under U.S.S.G. § 5K1.1. Yet nothing in the plea agreement conditioned the recommendation for a § 3E1.1 reduction on Copeland's substantial assistance to the government (as defined in § 5K1.1), and nothing in § 3E1.1 itself requires a defendant to provide substantial assistance to be eligible for a reduction. See U.S.S.G. § 3E1.1.[3] Accordingly, the government breached the plea agreement when it failed to recommend a two-level reduction under § 3E1.1(a) and affirmatively recommended denying such a reduction.

The government, however, did not breach the plea agreement by failing to file a motion for an extra one-level reduction under § 3E1.1(b). The plea

---

[3]On appeal, the government argues that Copeland's lack of cooperation constituted the "adverse information" that prevented him from qualifying for the acceptance-of-responsibility reduction. We reject this argument. The plea agreement dealt with cooperation in separate provisions, and nothing in the agreement conditioned the acceptance-of-responsibility recommendation on such cooperation.

agreement expressly stated that the determination as to whether Copeland qualified for this additional one-level reduction "rests solely with the [government], and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise." Thus, Copeland cannot now challenge the government's discretionary determination about this extra one-level § 3E1.1(b) reduction.

In addition, it does not matter to the breach analysis whether the district court would have actually followed the government's recommendation and granted a reduction for acceptance of responsibility. See Santobello v. New York, 404 U.S. 257, 262-63, 92 S. Ct. 495, 499 (1971) (remanding the case due to the prosecution's breach of a plea agreement, even though the sentencing judge stated that the breach did not influence the sentence and there was no reason to doubt the judge's statement); Johnson, 132 F.3d at 630 (stating that "the sentencing judge's acts are not important" to the issue of breach because the government, "not the court," violated the plea agreement).[4]

---

[4]The government argues that any breach of the plea agreement was harmless error because, even with the two-level reduction for acceptance of responsibility, Copeland's guideline range would have been 292 to 300 months, only 8 months less than the original 300-month range for Counts 27 and 37. This argument fails. Assuming, without deciding, that a breach of the plea agreement is subject to such harmless error analysis, the error here was not harmless. As the government acknowledges, the two-level reduction under § 3E1.1(a) would have reduced Copeland's guideline range, albeit by a relatively small amount, and the district court did not say that it would have imposed the same sentence with or without the reduction. See United States v. Williams, 627 F.3d 839, 845 (11th Cir. 2010) (holding that a sentencing error was not

10

### C.    Obstruction of Justice Enhancement

Copeland contends that the government also breached the plea agreement by advocating for an obstruction-of-justice enhancement under § 3C1.1. We disagree. The plea agreement contained no provision prohibiting the government from recommending an enhancement for obstruction of justice. Indeed, the agreement expressly reserved the government's right "to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein."

We recognize that, according to the § 3E1.1 commentary, an obstruction-of-justice enhancement "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, comment. (n.4). The same commentary also provides, however, that there may be "extraordinary cases in which adjustments under both §§ 3C1.1 [obstruction enhancement] and 3E1.1 [acceptance reduction] may apply." Id. Therefore, the fact that Copeland received an obstruction-of-justice enhancement does not automatically or necessarily prohibit him from receiving an acceptance-of-responsibility reduction.

Moreover, the government entered the plea agreement with full knowledge of Copeland's pre-indictment conduct that was later used for the obstruction-of-

---

harmless because the district court "did not state that it would impose the same sentence even if it erred in calculating the applicable advisory guideline range").

justice enhancement, and cannot now be excused from fully performing its promises as to acceptance of responsibility.  See United States v. Johnson, 132 F.3d 628, 630 (11th Cir. 1998) ("It is not the court's role to determine if the government made a wise choice in entering into the plea agreement.  Instead, the court is only responsible for ensuring the terms of a plea agreement are followed." (citation omitted)).

## D.    Remedy

Given the government's breach of the plea agreement in failing to recommend a two-level reduction under § 3E1.1(a), two remedies are available for Copeland: (1) "specific performance" of the agreement before a different sentencing judge, or (2) withdrawal of the guilty plea.  Johnson, 132 F.3d at 631; United States v. Foster, 889 F.2d 1049, 1056 (11th Cir. 1989) ("[W]hen the government breaches an agreement, the defendant must either be resentenced by a new judge or allowed to withdraw his plea, regardless of whether the judge was influenced [by the government's breach].").  Specific performance is appropriate here because "no question exists that the plea was knowingly and voluntarily entered," and Copeland does not seek to withdraw his plea.  See id.

Accordingly, we vacate Copeland's sentence and remand for resentencing before a different judge, consistent with this opinion.

**VACATED AND REMANDED.**