[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16339
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cr-20527-CMA-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ARBILIO YANES,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 16, 2013)

Before TJOFLAT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Arbilio Yanes appeals his convictions and 151-month sentence after he pleaded guilty to a 13-count indictment charging: conspiracy to commit health care fraud and to pay health care kickbacks, in violation of 18 U.S.C. § 371 (Count 1); health care fraud, in violation of 18 U.S.C. § 1347 (Counts 2 and 3); health care kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) (Counts 4–7); money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 8–11); and money laundering, in violation of 18 U.S.C. § 1957 (Counts 12 and 13).  On appeal, Yanes argues that the district court (1) did not ensure that his guilty plea was knowing and voluntary, (2) improperly imposed a four-level sentencing enhancement, and (3) imposed a substantively unreasonable total sentence.  After a thorough review of the briefs and the record, we affirm.

## I.

Yanes first argues that the district court failed to address two of the three core concerns of Federal Rule of Criminal Procedure 11, namely, ensuring that his guilty plea was free of coercion and that he was fully aware of the consequences of pleading guilty.  Even though Yanes indicated that threats had been levied against both him and his children to ensure that he entered a guilty plea, he contends that the district court failed to inquire into the nature of the threats.[1]  Additionally, the

---

[1] The plea colloquy proceeded as follows:

2

court failed to inform Yanes that he had a right to persist in a not guilty plea, as well as to ensure that he understood that by entering a guilty plea he was waiving his right to a jury trial.

Ordinarily, we review the voluntariness of a guilty plea de novo. *See United States v. Bushert*, 997 F.2d 1343, 1352 (11th Cir. 1993). In this case, however, because Yanes did not raise the issue of the court's failure to comply with Rule 11

THE COURT: Is anyone putting pressure upon you, forcing you or coercing you to plead guilty?

THE DEFENDANT: Well, you know what happened over there in Brazil. I am [sic] personally threatened and so was my family, especially my children. That if I came to the United States, I had to plead guilty to all the charges and that's one of the things that I explained to my attorney.

THE COURT: Mr. Yanes, if your plea today is not voluntary and free of coercion, I cannot accept it. Then we can proceed to trial.

THE DEFENDANT: Well, I accept my guilt and what I did, my mistakes, I accept those.

THE COURT: Are you being forced to plead guilty?

THE DEFENDANT: No.

THE COURT: Are any of these threats that you alluded to compelling you to plead guilty when you're not?

THE DEFENDANT: No. But I believe it is always important to let you know what happened.

THE COURT: You need more time to think it over?

THE DEFENDANT: No, no.

THE COURT: Are any of these threats to yourself, your family and your children compelling you to enter a guilty plea to all of these charges?

THE DEFENDANT: No.

3

below, we review it only for plain error. *See United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (holding that "when a defendant fails to object to a Rule 11 violation, we review only for plain error"). To establish plain error, a defendant must show (1) error, (2) that is plain, (3) that affected substantial rights, and (4) that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See id.*

The Supreme Court has held that "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004). "A guilty plea involves the waiver of a number of a defendant's constitutional rights, and must therefore be made knowingly and voluntarily to satisfy the requirements of due process." *Moriarty*, 429 F.3d at 1019. In accepting a defendant's guilty plea, the district court must specifically address the three core principles of Rule 11 to "ensur[e] that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *Id.* "To ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea. . . ." *Id.* A defendant has "the right to plead not

4

guilty (or persist in such a plea)." *Id.*; *see* Fed. R. Crim. P. 11(b)(1)(B).  We will uphold a plea colloquy in which the district court fails to address an item required by Rule 11 "so long as the overall plea colloquy adequately addresses the[] three core concerns." *United States v. Monroe*, 353 F.3d 1346, 1354 (11th Cir. 2003).

In this case, the district court addressed each of the Rule 11 concerns, and specifically informed Yanes of the requirement that he enter his plea free of coercion and of the consequences of entering a guilty plea.  During the plea colloquy, Yanes initially indicated that both he and his family had been threatened in Brazil, and that if he returned to the United States, he "had to plead guilty to all the charges."  At that point during the colloquy, the district court noted that it could not accept Yanes's plea unless it was voluntary and free of coercion.  The court also specifically questioned Yanes about whether the purported threats were compelling him to plead guilty.  Yanes, in response, confirmed that nobody had threatened or coerced him or his family into entering a guilty plea, and he was pleading guilty because he was in fact guilty of all the counts listed in the indictment.  Thus, the district court's inquiry was sufficient.  *See Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977) (noting that the Supreme Court has stated that "[s]olemn declarations in open court carry a strong presumption of verity" that cannot be overcome by the subsequent assertion of conclusory and contradictory allegations).

5

Next, contrary to Yanes's contention, it is clear that the district court advised Yanes of the consequences of his plea, specifically explaining: (1) that the guidelines were advisory, and that the district court would consider the presentence investigation report (PSI) and other factors in determining Yanes's sentence; (2) the possible penalties for his crimes, including the statutory maximum sentence for each offense; (3) that entering a guilty plea would cause him to forfeit his right to a jury trial; and (4) that Yanes faced possible deportation as a result of his plea. There is no indication in the record, nor does Yanes argue, that he did not understand the above information or that he would not have entered his guilty plea had the district court explicitly stated that he retained the right to persist in his not guilty plea. *See* Fed. R. Crim. P. 11(h) (providing that "[a] variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights"). Accordingly, the district court did not plainly err in accepting Yanes's guilty plea as to all the counts listed in the indictment.

## II.

Yanes next contends that the district court erred by imposing a four-level enhancement to his offense level, pursuant to U.S.S.G. § 3B1.1(a), based on his role in the crime because the government failed to meet its burden of proving the facts required for the enhancement and where, as the government concedes,

co-conspirator Efren Mendez played an equal role in the offense and only received a three-level role enhancement, pursuant to § 3B1.1(b).

We review the district court's decision to apply an aggravating role enhancement only for clear error. *United States v. Poirier*, 321 F.3d 1024, 1036 (11th Cir. 2003). We will not reverse "unless our review of the record leaves us with the definite and firm conviction that a mistake has been committed." *Id.* at 1035 (internal quotation marks omitted).

Where "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," sentencing courts should apply a four-level enhancement. U.S.S.G. § 3B1.1(a). By contrast, a three-level enhancement applies where a defendant was a manager or supervisor, but not an organizer or leader. *See id.* § 3B1.1(b). The Guidelines commentary further explains that where, as here, the criminal organization is relatively small, "the distinction between organization and leadership, and that of management and supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility." U.S.S.G. § 3B1.1 cmt. background. Accordingly, the four-level enhancement could be imposed on Yanes only if he were both (1) an organizer or leader, and (2) the criminal activity involved either five or more participants or was otherwise extensive. *See United States v. Alred*, 144 F.3d 1405, 1421 (11th Cir.1998) ("[T]he plain language of [§] 3B1.1(a)

7

requires *both* a leadership role *and* an extensive operation. Without proof of the defendant's leadership role, evidence of the operation's extensiveness is insufficient as a matter of law to warrant the adjustment." (emphasis in original) (internal quotation marks omitted)).

Comment four to § 3B1.1, in turn, sets forth seven explanatory factors that courts should consider in determining a defendant's role in the offense as an "organizer" or a "leader" for purposes of the aggravating-role enhancement:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

*United States v. Gupta*, 463 F.3d 1182, 1198 (11th Cir. 2006) (quoting U.S.S.G. § 3B1.1 cmt. n.4). "There is no requirement that all the considerations have to be present in any one case." *United States v. Ramirez*, 426 F.3d 1344, 1356 (11th Cir. 2005) (per curiam). Instead, "these factors are merely considerations for the sentencing judge." *Id.* However, "[§] 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership." *Gupta*, 463 F.3d at 1198 (internal quotation marks omitted). Thus, for example, a defendant's management of assets, standing alone, is insufficient to support an enhancement under § 3B1.1. *See United States v. Glover*, 179 F.3d 1300, 1303 (11th Cir. 1999) ("We now squarely decide that a [§] 3B1.1

enhancement cannot be based solely on a finding that a defendant managed the assets of a conspiracy.").  Rather, there must be evidence that the defendant exerted some control, influence or decision-making authority over another participant in the criminal activity.  *Id.*  Additionally, more than one person can qualify as an organizer or leader of a criminal conspiracy.  U.S.S.G. § 3B1.1 cmt. n.4.

Although Yanes did not dispute that the conspiracy involved five or more participants or was otherwise extensive, he did object to the district court's finding that he was an organizer or leader of the conspiracy, and maintained that his role in the offense conduct was comparable to Mendez, who only received a three-level role enhancement under § 3B1.1(b).[2]  Subsequent to Mendez's sentencing, the government conceded that Mendez was "probably equally a leader" in the scheme and that Yanes and Mendez "played an equal role in this offense."  However, the government highlighted that there were pertinent differences between the two

---

[2] Yanes also argues for the first time on appeal that the government failed to meet its burden to show that he recruited accomplices or that he exercised any kind of control, influence, or decision-making authority over another participant in the scheme.  Even assuming that Yanes had raised this issue below, he invited any purported error.  *See United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (per curiam) (noting that the invited error doctrine precludes plain error review of an error invited or induced by a party).  During sentencing, Yanes affirmatively represented that he should have been subject to a three-level role enhancement under § 3B1.1(b), similar to codefendant Mendez, which would have required that he exercised control or authority over at least one other criminal participant.  *See United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009) ("Section 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership." (alteration and internal quotation marks omitted).

defendants.  Specifically, if Yanes had not fled to Brazil, he might have been able to provide invaluable information about Mendez's involvement in the offense conduct that likely would have resulted in Mendez also receiving a four-level role enhancement under § 3B1.1(a).  *See United States v. Vallejo*, 297 F.3d 1154, 1169 (11th Cir. 2002) ("The defendant does not have to be the sole leader or kingpin of the conspiracy in order to be considered an organizer or leader within the meaning of the Guidelines."); *see also* U.S.S.G. § 3B1.1 cmt. n.4 ("There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.").

Moreover, even though Mendez may have been equally culpable in the health care fraud scheme, there was sufficient evidence to support the district court's imposition of a four-level enhancement to Yanes's offense level.  Record evidence shows, among other things, that Yanes signed the Medicare application necessary to obtain a provider number and listed himself as the sole person with an ownership interest in Research Center of Florida, Inc.  He also signed the majority of the checks that were paid to his co-conspirators, who in turn recruited patients for the scheme.  Additionally, the government introduced testimony at Yanes's sentencing hearing to show that Yanes created a large number of shell companies, none of which had any legitimate purpose other than to launder funds.  Based on this record, the district court did not clearly err by applying a four-level

10

enhancement, pursuant to § 3B1.1(a), based on Yanes's role in the offense conduct.

## III.

Finally, Yanes asserts that the district court imposed an unreasonable sentence because his total 151-month sentence, at the top-end of his advisory guideline range, is almost double Mendez's original 78-month sentence, even though they occupied the same role in the criminal enterprise, and this resulted in an unjust sentencing disparity between the two individuals.

We review the reasonableness of a sentence "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). The district court is required to impose a sentence "sufficient, but not greater than necessary to comply with the purposes" listed in § 3553(a), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. 18 U.S.C. § 3553(a)(2). In imposing a particular sentence, the court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* §

3553(a)(1), (3)–(7).  District courts are to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct.  *Id.* § 3553(a)(6).  However, a sentencing disparity is not "unwarranted" if the individuals being compared are not similarly situated.  *See United States v. Spoerke*, 568 F.3d 1236, 1252 (11th Cir. 2009).

In reviewing the reasonableness of a sentence, we first ensure that the sentence was procedurally reasonable.  *Gall*, 552 U.S. at 51, 128 S. Ct. at 597. Once we determine that a sentence is procedurally sound, we examine whether the sentence was substantively unreasonable in light of the totality of the circumstances and the § 3553(a) factors.  *Id.*, 128 S. Ct. at 597.  "The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors."  *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).  The weight given to the § 3553(a) factors is within the district court's sound discretion and "we will not substitute our judgment" in weighing those factors.  *United States v. Irey*, 612 F.3d 1160, 1261 (11th Cir. 2010) (en banc).  We reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) (internal quotation marks omitted).

Here the district court did not abuse its discretion by imposing a 151-month sentence, at the top-end of Yanes's advisory Guideline range. Although a district court is required to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, Mendez, who initially received a 78-month sentence, was not similarly situated. In fact, in a sentencing memorandum Yanes conceded a "substantial" difference between himself and his co-conspirators because he had to be extradited from Brazil to face charges, and at sentencing, Yanes described his flight to Brazil as an "aggravating factor." Thus, although Yanes contends that he and Mendez were "equally culpable," he failed to show that they were similarly situated within the meaning of § 3553(a)(6).

Next, the district court properly considered the § 3553(a) factors including the seriousness of Yanes's offense and the need to deter him and others from committing Medicare fraud. *See United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (noting that "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence" (alternations and internal quotation marks omitted)). Additionally, Yanes's total 151-month sentence was within the advisory Guidelines range of 121 to 151 months' imprisonment. *See United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam) (stating

13

that "there is a range of reasonable sentences from which the district court may choose," and that "we ordinarily will expect" a sentence within the defendant's advisory Guidelines range "to be a reasonable one").  Based on the foregoing, Yanes's total 151-month sentence was substantively reasonable, and we therefore affirm.

**AFFIRMED.**