[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15840
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20474-FAM-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SUSAN CHI,
YIRAL CARDIDAD CARDONA,

Defendants-Appellants.


_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(July 14, 2015)

Before TJOFLAT, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

Susan Chi and Yiral Cardidad Cardona appeal their 120-month sentences and orders to pay restitution to Medicare after a jury found them guilty of conspiracy to defraud the United States and to pay healthcare kickbacks, and three counts of paying kickbacks.

As the president and vice president of Vista Home Health Services, Cardona and Chi paid kickbacks to recruiters for referring Medicare patients, then submitted claims to Medicare for services purportedly rendered.  In their joint brief on appeal, Cardona and Chi make three arguments: (I) there was insufficient evidence to support four-level role enhancements under United States Sentencing Guidelines § 3B1.1(a) as they did not exercise authority or control over the patient recruiters; (II) their sentences were procedurally and substantively unreasonable; and (III) the district court clearly erred in imposing restitution based on the amount of money that they withdrew from Vista's bank account over the course of the conspiracy, rather than on Medicare's actual losses as a result of the conspiracy.  We affirm as to issues (I) and (II), and vacate and remand as to issue (III).

I

We review for clear error the district court's determination of a defendant's role in the offense as it relates to a guidelines enhancement.  United States v. Jennings, 599 F.3d 1241, 1253 (11th Cir. 2010).  "The government bears the burden of proving by a preponderance of the evidence that the defendant had an

2

aggravating role in the offense.  United States v. Yeager, 331 F.3d 1216, 1226

(11th Cir. 2003).

Under § 3B1.1, a defendant's base offense level is increased by four levels if

she "was an organizer or leader of a criminal activity that involved five or more

participants or was otherwise extensive."  Courts applying § 3B1.1 consider the

following factors:

> the exercise of decision making authority, the nature of participation
> in the commission of the offense, the recruitment of accomplices, the
> claimed right to a larger share of the fruits of the crime, the degree of
> participation in planning or organizing the offense, the nature and
> scope of the illegal activity, and the degree of control and authority
> exercised over others.

See § 3B1.1 cmt. n.4; United States v. Njau, 386 F.3d 1039, 1041 (11th Cir. 2004)

(per curiam).  Every factor need not be present; they "are merely considerations for

the sentencing judge."  United States v. Martinez, 584 F.3d 1022, 1026 (11th Cir.

2009) (quotation omitted).

The district court did not clearly err in applying four-level enhancements for

Cardona and Chi's leadership roles.  Evidence showed that they exercised

decision-making authority within the conspiracy, participated in planning and

organizing the conspiracy, and exerted control and authority over several

participants in the conspiracy including the patient recruiters.  See id. (holding that

the enhancement is justified if there is "evidence that the defendant exerted some

control, influence or decision-making authority over another participant in the

3

criminal activity"); see also United States v. Vallejo, 297 F.3d 1154, 1169 (11th Cir. 2002) (concluding that evidence that the defendant gave orders to co-conspirators supported the district court's application of the § 3B1.1 enhancement).

## II

Cardona and Chi make four separate arguments for why their 120-month sentences of imprisonment, imposed well above their guidelines ranges, were unreasonable.[1]  We address each in turn, but find no merit in any.  We review the reasonableness of a sentence for abuse of discretion.  Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).  We first ensure that the court committed no significant procedural error, such as improperly calculating the guidelines range, selecting a sentence based on clearly erroneous facts, or failing to consider the 18 U.S.C. § 3553(a) factors.  Id. at 51, 128 S. Ct. at 597.  Once we determine that a sentence is procedurally sound, we then ask whether the sentence was substantively reasonable in light of the totality of the circumstances.  Id.  "The party challenging the sentence bears the burden of showing [it] is unreasonable in light of the record and the § 3553(a) factors."  United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).

---

[1] Their guidelines ranges were 63–78 months.

*First*, Cardona and Chi argue that their sentences are unreasonable because the court did not support their upward variances with sufficient justifications. We cannot agree.

The district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. § 3553(a)(1), (3)–(7). The weight given to any single § 3553(a) factor is committed to the sound discretion of the district court. United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007). A court does not abuse its discretion by enhancing a defendant's sentence based on the same factors already accounted for by the guidelines. United States v. Amedeo, 487 F.3d 823, 833–34 (11th Cir. 2007).

When the court imposes a variance, it must have a sufficiently compelling justification to support the degree of the variance. Gall, 552 U.S. at 50, 128 S. Ct. at 597. Although there is no "proportionality" principle in sentencing, a major

variance does require a more significant justification than a minor one. United States v. Irey, 612 F.3d 1160, 1196 (11th Cir. 2010) (en banc) (holding that a 42% variance was major). Nonetheless, we must give "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. at 1187 (quotation omitted). We will vacate a sentence only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. at 1190 (quotation omitted). The fact that a sentence is imposed well below the statutory maximum penalty is indicative of its reasonableness. See Gonzalez, 550 F.3d at 1324.

Cardona and Chi have not met their burden of establishing that their 120-month sentences were substantively unreasonable in light of the record and the § 3553(a) factors. In imposing an upward variance, the district court relied mainly on the nature and circumstances of the offense and on the need to punish Cardona and Chi and to afford adequate deterrence. Although the court may have given greater weight to these factors than others, that is a decision committed to the sound discretion of the district court. And contrary to Cardona and Chi's argument, the court did not place unjustified reliance on the need for deterrence. Rather, the record shows that the court considered several other § 3553(a) factors,

6

including the need to punish, the need to promote respect for the law, Cardona and Chi's leadership roles in the offense, and their lack of remorse and acknowledgment of the seriousness of the offense—all of which the court noted or discussed at sentencing.  To be sure, the court recognized (even emphasized) the importance of the need for deterrence, especially in white collar cases.  Because this factor is neither improper nor irrelevant, the district court did not abuse its discretion by giving it significant weight.  See Irey, 612 F.3d at 1189.  Thus, while the variance was major, the district court provided sufficient justifications to support it.

*Second*, Cardona and Chi argue that the court committed a procedural error by requiring them to make arguments for downward variances before it determined their guidelines ranges.  We need not decide whether the court erred, because if it did, Cardona and Chi invited the error.  At sentencing, the court asked if it could hear variance arguments before it determined their guidelines ranges.  Cardona's counsel replied that the court was not prohibited from doing so and explicitly stated that, if the court wished to hear variance arguments first, he would proceed accordingly.[2]  Thus, any error regarding the order of the sentencing proceedings was invited and is waived on appeal.  See United States v. Ross, 131 F.3d 970, 988

---

[2] At sentencing, Cardona's counsel advised the court that the arguments of either Cardona or Chi's counsel were applicable to both defendants, so the invited error of one is the invited error of the other.

7

(11th Cir. 1997) ("It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." (quotation omitted)).[3]

*Third*, Cardona and Chi insist that their above-guidelines sentences violated the guidelines' principle that courts should avoid unwarranted sentencing disparities. See § 3553(a)(6). That includes disparities from the sentences of "criminal defendants in other cases who were convicted of similar crimes." United States v. McQueen, 727 F.3d 1144, 1160 (11th Cir. 2013). Cardona and Chi point to two classes of defendants that they insist are valid comparators: (1) the recruiters who were their co-defendants in this case, and (2) defendants who committed similar crimes in other cases. Neither class of comparators is valid.

Cardona and Chi's co-conspirators—the recruiters—are not valid comparators because they pleaded guilty and cooperated with the government, whereas Cardona and Chi went to a jury trial. See United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009) (explaining that defendants who cooperate with the government and enter plea agreements are not similarly situated to defendants who do not assist the government and proceed to trial).

---

[3] Even if Cardona and Chi did not invite this error, they did not object to it in the district court, so we would review it only for plain error. See United States v. Vandergrift, 754 F.3d 1303, 1307 (11th Cir. 2014). And they have not demonstrated that this alleged procedural error affected their sentences, and, thus, their substantial rights, as they must to show plain error. See id. at 1312; see also id. (explaining that a procedural error at sentencing did not affect a defendant's substantial rights where he "failed to show that his sentence would have been different but for the" error).

8

Neither are Cardona and Chi's sentences disparate from those imposed in similar Medicare fraud cases. Their only argument on this score is that their sentences were above their respective guidelines ranges, whereas other, similarly situated healthcare fraud defendants were sentenced within their own guidelines ranges. But § 3553(a)(6) requires only that the district court prevent unwarranted disparities in the <u>actual sentences</u> imposed. It does not instruct the court to consider disparities as to whether the sentences are within or without the guidelines range. And many of the actual sentences to which Cardona and Chi point for similarly situated defendants are comparable to or greater than their own. <u>See,</u> <u>e.g.</u>, <u>United States v. Gonzalez</u>, 566 F. App'x 898, 900, 903 (11th Cir. 2014) (per curiam) (97-month sentence); <u>United States v. Delgado</u>, 551 F. App'x 508, 508, 511 (11th Cir. 2014) (per curiam) (120 months); <u>United States v. Yanes</u>, 542 F. App'x 797, 803 (11th Cir. 2013) (per curiam) (151 months); <u>United States v. Santos</u>, 476 F. App'x 694, 696–97 (11th Cir. 2012) (per curiam) (108 months).

*Fourth*, Cardona and Chi argue the court's factual finding that they were not remorseful was clearly erroneous. It was not. At trial, Cardona testified that the recruiters were legitimate employees, that she did not pay them any kickbacks, that she did not believe that she had done anything inappropriate by paying them for patient referrals, and that she never intended to violate the law. And at sentencing, she stated that "it was never [her] intention to commit this wrongdoing." Likewise,

9

Chi testified at trial that she did not pay any patient in exchange for any service and that she did not give any recruiters money to give to patients. In a post-arrest statement, Chi denied that she paid recruiters for patients, and she said Vista discouraged that practice. Finally, at sentencing, she stated that she wanted to express her remorse only for what "may have happened," and insisted that her actions were not done with the intent to violate the law. Based on this record, it was not clearly erroneous to find that neither Cardona nor Chi was remorseful.

## III

Finally, Cardona and Chi argue that the court's order of restitution is improper. The Mandatory Victim Restitution Act of 1996 requires district courts to order restitution for certain offenses. 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). The district court "shall order restitution to each victim in the full amount of each victim's losses as determined by the court." Id. § 3664(f)(1)(A). A restitution order "must be based on the amount of loss actually caused by the defendant's conduct." United States v. Liss, 265 F.3d 1220, 1231 (11th Cir. 2001). The government must prove the amount of loss to the victim by a preponderance of the evidence. Id. § 3664(e). The district court "must determine whether any value has been rendered to the victim[s] in the form of a service or product that should be offset against the restitution amount." United States v. Huff, 609 F.3d 1240, 1249 (11th Cir. 2010). In determining the proper restitution amount, "the district court

10

must make specific factual findings of whether the victim suffered a loss and the amount of those actual losses." Id. at 1249.

Cardona and Chi contend that the restitution ordered by the court (approximately $370,000 and $360,000) was based on their total withdrawals from Vista's bank account during the indictment period, which exceeded any loss suffered by Medicare. They insist that their withdrawals include legitimate income and were not all losses to Medicare. The government admits that the restitution order must be vacated for this reason, but the parties disagree about whether Medicare suffered any losses at all, and whether the government should be permitted to introduce new evidence on remand.

Because the parties agree that the district court erred by calculating restitution based on the amount of money that Cardona and Chi received from the conspiracy, rather than the amount that Medicare actually lost as a result of the conspiracy, we vacate their restitution orders and remand for resentencing.[4] But the question remains: may the government introduce new evidence on remand? We conclude that it may.

---

[4] To the extent the government suggests otherwise, Cardona and Chi's objection to restitution was properly preserved for appellate review. They objected to the obligation to pay restitution in their objections to the PSR. The district court clearly understood the objection. It opened the sentencing hearing by asking them for their position on restitution, engaged in a lengthy discussion about the legality and proper calculation of restitution, and ended the sentencing hearing by noting that the defendants' objection was "preserved." While they did not object to the district court's restitution order after it was pronounced, Cardona and Chi's objection was raised in writing and at the hearing prior to the imposition of the sentence, and, thus, is preserved for appeal. See United States v. Weir, 51 F.3d 1031, 1033 (11th Cir. 1995).

11

This Court has broad discretion to determine the limits of a remand for resentencing.  28 U.S.C. § 2106; United States v. Martinez, 606 F.3d 1303, 1304 (11th Cir. 2010).  In Martinez, we held that the government had "powerful reasons" to present additional evidence on remand for resentencing, where the defendant had made only a vague and unclear objection to an enhancement at sentencing and acknowledged that the bare facts in the PSR supported the enhancement.  606 F.3d at 1306.  Similarly, in United States v. Tampas, 493 F.3d 1291 (11th Cir. 2007), we remanded the case for resentencing on the issue of restitution so that the government could prove that the defendant's embezzlement scheme caused an actual loss to the victim.  Id. at 1305.  In granting the government relief, we rejected the defendant's argument that a remand would unfairly give the government "two bites at the apple."  Id.  However, a "remand for further findings is inappropriate when the issue was before the court and the parties had an opportunity to introduce relevant evidence."  United States v. Canty, 570 F.3d 1251, 1257 (11th Cir. 2009); see also United States v. Washington, 714 F.3d 1358, 1360–62 (11th Cir. 2013) (prohibiting the government from presenting additional evidence on remand, where nothing had prevented the government from presenting the evidence at the initial sentencing).

At the original sentencing, the parties' restitution arguments focused on the amount of kickbacks paid to the recruiters, the value of improper benefit conferred,

and the amount of money that Cardona and Chi gained as a result of the conspiracy. The court did not consider, and the parties did not raise, arguments concerning the <u>actual losses</u> that Medicare suffered, discounted by the value of medically necessary home health services. Given that Cardona and Chi conceded that the proper amount of restitution was the amount of kickbacks paid to the recruiters, the government had a "powerful" reason not to present evidence of the correct amount of restitution. See <u>Martinez</u>, 606 F.3d at 1306. Because the government did not have the opportunity to introduce the correct type of evidence at the initial sentencing hearing, it should be permitted to do so at resentencing. Cf. <u>Washington</u>, 714 F.3d at 1362; <u>Canty</u>, 570 F.3d at 1257. On remand, the district court must subtract the amount of Medicare's payments for services to patients that were medically necessary, and the parties may present new evidence in support of their positions regarding that amount.

Upon review of the entire record on appeal, and after consideration of the parties' briefs, we affirm the defendants' total 120-month sentences, and vacate and remand their restitution orders.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

13