[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13596
Non-Argument Calendar

_____

D.C. Docket No. 6:19-cr-00004-GKS-EJK-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SCHARLENE ALISA HUDSON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 22, 2020)

Before GRANT, LUCK and MARCUS, Circuit Judges.

PER CURIAM:

Scharlene Hudson appeals her 94-month sentence for access-device fraud, in

violation of 18 U.S.C. §§ 1029(a)(3), (c)(1)(A)(i), and aggravated identity theft, in

violation of 18 U.S.C. § 1028A(a)(1).  Hudson's convictions arose out of a scheme

in which she used, without authorization, other people's personal identity information to file fraudulent tax returns and collect tax refunds for her benefit; only a handful of the individuals investigated had given Hudson permission to file tax returns on their behalf. On appeal, she argues that: (1) the district court erred in applying two vulnerable-victim enhancements because the record is insufficient to support its finding that her victims were vulnerable; (2) on remand, the district court should not permit the government to introduce new evidence concerning the vulnerability of her victims because it would be an inappropriate "second bite of the apple"; and (3) the district court erred in calculating the loss amount, because it included refunds issued to individuals who had authorized Hudson to file returns on their behalf. In response, the government concedes that the district court clearly erred in applying two vulnerable-victim enhancements to Hudson's offense level and that the district court clearly erred in determining the intended loss amount, but argues that, on remand, it should be able to present evidence at resentencing concerning the vulnerable-victim enhancements. After careful review, we vacate and remand for resentencing, and conclude that the government should be allowed to present vulnerable-victim evidence at resentencing.

We "review de novo the district court's application of a U.S.S.G. § 3A1.1 enhancement, as it presents a mixed question of law and fact, but give due deference to the district court's determination that a victim was vulnerable, as this is a factual

2

finding." United States v. Kapordelis, 569 F.3d 1291, 1315-16 (11th Cir. 2009). If the district court erred in making a sentencing determination, we must remand if the error was not harmless, in that it affected the overall sentence imposed. See United States v. Mathews, 874 F.3d 698, 710 (11th Cir. 2017). The burden is on the government to establish the facts necessary to support an enhancement by a preponderance of the evidence. United States v. Turner, 626 F.3d 566, 572 (11th Cir. 2010). We review a district court's determination of the loss amount, pursuant to U.S.S.G. § 2B1.1.(b)(1), for clear error. United States v. Ford, 784 F.3d 1386, 1396 (11th Cir. 2015). The district court is required to make a reasonable estimate of the loss based on reliable and specific information. Id.

First, we agree with the parties that the district court clearly erred in applying two vulnerable-victim enhancements to Hudson's offense level. Determining whether an enhancement applies is a fact-intensive inquiry that must be made on a case-by-case basis. United States v. Frank, 247 F.3d 1257, 1260 (11th Cir. 2001). In conducting this inquiry, the district court may make factual findings based on evidence presented during trial, facts admitted in a defendant's guilty plea, undisputed statements in the presentence investigation report ("PSI"), or evidence presented at the sentencing hearing. United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004).

3

Section 3A1.1(b)(1) applies a two-level increase "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim."  U.S.S.G. § 3A1.1(b)(1).  A "vulnerable victim" is defined as:

> a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct.
>
> Subsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability.

Id. § 3A1.1, comment. (n.2).  Both a victim's circumstances and immutable characteristics can render a victim vulnerable for the purposes of the § 3A1.1(b) enhancement.  United States v. Bradley, 644 F.3d 1213, 1288 (11th Cir. 2011). Further, the enhancement "focuses chiefly on the conduct of the defendant," and should apply when a defendant targets her victims to take advantage of the victims' perceived susceptibility to the offense, or when the defendant knew or should have known the victims were vulnerable.  See Frank, 247 F.3d at 1259-60; United States v. Birge, 830 F.3d 1229, 1233-34 (11th Cir. 2016).

Ultimately, a victim's membership in a certain class or occupation is, by itself, insufficient to support a finding that the victim is "vulnerable."  See Frank, 247 F.3d at 1259-60.  For example, bank tellers, as a class, are not per se vulnerable victims within the meaning of § 3A1.1, though they are the typical victims of bank robberies.

4

United States v. Phillips, 287 F.3d 1053, 1057 (11th Cir. 2002).  However, bank tellers may be vulnerable victims where they possess unique or specific characteristics which make them more vulnerable or susceptible to robbery than ordinary bank robbery victims.  See id. at 1057-58 (holding the tellers were vulnerable victims, as perceived by the defendant, because they were located in a remote location with little or no police protection).

Here, as the government concedes, the district court clearly erred in finding that Hudson's victims were vulnerable because the record was insufficient to support this finding based solely on the age of the victims.  The only record evidence tending to show that Hudson's victims were vulnerable was that approximately 55 of the 98 victims were age 65 or older, approximately 28 were age 70 or older, and one victim was disabled.  However, under our case law, that the victims were elderly, or that one victim was disabled, does not per se make them "unusually vulnerable" to identity theft -- even if they are the typical victim -- because a victim belonging to a class or having a characteristic by itself is insufficient to support a finding of vulnerability.  See Frank, 247 F.3d at 1259-60.  For the district court to have correctly made a factual finding that Hudson's victims were vulnerable, the government needed to provide additional evidence that: (1) Hudson's victims were unusually vulnerable to identity theft outside of merely being elderly, and (2) Hudson knew or should have known her victims were unusually vulnerable.  See

5

Birge, 830 F.3d at 1233.  Moreover, this error was not harmless because the district court's application of the two vulnerable-victim enhancements raised Hudson's offense level an extra four levels.  See Mathews, 874 F.3d at 710.  On this record, the district clearly erred in applying the two vulnerable-victim enhancements.

Further, on remand, the government should be able to present evidence at resentencing concerning the vulnerable-victim enhancements.  We have discretion to permit the government to present new evidence at resentencing even though it amounts to giving the government "a second bite at the apple."  United States v. Washington, 714 F.3d 1358, 1362 (11th Cir. 2013).  A general vacatur of a sentence typically allows for resentencing de novo.  United States v. Martinez, 606 F.3d 1303, 1304 (11th Cir. 2010).  Thus, upon a remand based on our conclusion that the district court improperly imposed a sentencing enhancement, the government generally may present new evidence in support thereof.  Id. at 1304-06.

A remand for further findings may be inappropriate in cases where "the issue was before the [district] court and the parties had an opportunity to introduce relevant evidence."  United States v. Canty, 570 F.3d 1251, 1257 (11th Cir. 2009) (precluding the government from presenting evidence on remand because the government had explicitly disclaimed reliance on certain evidence at the first sentencing hearing).  Conversely, we've allowed the government to present evidence at resentencing when a defendant made "vague and unclear" objections at the sentencing hearing.

6

Martinez, 606 F.3d at 1306; see also United States v. Wright, 862 F.3d 1265, 1276 (11th Cir. 2017) (holding that both parties could submit new evidence on remand because the defendant had made a general objection but did not articulate the specific evidentiary objection argued on appeal).   Ultimately, we have broad discretion to decide the limits of a remand for resentencing as may be just under the circumstances of the case.  Martinez, 606 F.3d at 1304, 1306 (citing 28 U.S.C. § 2106).

Here, Hudson's objections in the district court were general and unclear, lacking the specificity now argued on appeal.  In her written objection to the PSI's recommendation that the vulnerable-victim enhancements were applicable, Hudson wrote "Objection" and then merely requested the information the government was relying on for those claims.  Then, during the sentencing hearing, when the district court addressed Hudson's objection to the vulnerable-victim enhancements, all defense counsel said was that "the final objection is the two-level enhancement for multiple victim[s] and the two-level enhancement for a large number of vulnerable victims."  The district court did not ask for further argument from either party before it adopted the findings of the PSI, and we cannot determine whether Hudson would have made the argument that evidence of her victims' elderly age, by itself, was insufficient to support the application of the vulnerable-victim enhancement; instead, Hudson's first mention of this specific argument was on appeal.

7

In short, the parties did not truly have "an opportunity to introduce relevant evidence" on the issue of whether Hudson's victims were vulnerable. See Canty, 570 F.3d at 1257. As a result, permitting the government to present evidence to help establish that Hudson's victims were vulnerable would be appropriate at resentencing. See Martinez, 606 F.3d at 1304-06. Unlike in Canty, the government here did not explicitly waive reliance on specific evidence, fail to object to the manner the sentence was imposed, and then ask for a second opportunity to prove that an enhancement applied using previously disavowed evidence. See 570 F.3d at 1256-57. Because the sound reasons present in Canty to deny a "second bite at the apple" are not present in this case, we conclude that, on remand, the government should be permitted to introduce new evidence concerning the victims' vulnerability. See Martinez, 606 F.3d at 1305.

We also agree with the parties that the district court erred by improperly calculating the loss amount for purposes of sentencing. The Sentencing Guidelines provide that the loss attributable to the defendant is "the greater of actual loss or intended loss," and that the "intended loss" is defined as the "pecuniary harm that the defendant purposely sought to inflict." U.S.S.G. § 2B1.1, comment. (n.3(A), (A)(ii)). The district court commits a clear error calculating the loss amount where it includes in that calculation any amount that is not a reasonably foreseeable harm intended by the defendant. Cf. United States v. Medina, 485 F.3d 1291, 1304 (11th

8

Cir. 2007) (holding that the district court clearly erred in calculating the loss amount where it failed to make factual findings showing that it had excluded payments which were made for claims that were medically necessary).

Here, as the government concedes, the district court clearly erred when it determined that the intended loss amount was $563,307.88. This figure incorrectly included $47,243.00 that was paid by the IRS directly to Hudson's victims who had given Hudson permission to file taxes on their behalf, and no evidence showed that these taxpayers were not entitled to those refunds. Cf. Medina, 485 F.3d at 1304. The $47,230.00 was not part of the loss attributable to the defendant because it was not reasonably part of the pecuniary harm the defendant intended to inflict; Hudson had filed those returns with permission, and those refunds were paid directly to those individuals. See U.S.S.G. § 2B1.1, comment. (n.3(A)(ii)). Thus, the district court's determination was not a reasonable estimate of the loss amount based on the record. See Ford, 784 F.3d at 1398. Because subtracting the incorrectly added amount would lower the intended total loss amount to $516,064.88, and subsequently lower the offense level increase under § 2B1.1(b)(1)(H) from 14 to 12, this error was not harmless. See Mathews, 874 F.3d at 710. Accordingly, we also vacate and remand on this basis for resentencing consistent with this opinion.

**VACATED AND REMANDED.**

9